**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

**CIVIL NO. 1:08CV484-02**
**(1:06CR253)**

| | | |
|---|---|---|
| **JASON JEROME HOLT,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **O R D E R** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, filed October 9, 2008. No response is necessary from the Government.

## I. STANDARD OF REVIEW

A prisoner in federal custody may attack his conviction and sentence on the grounds that it is in violation of the Constitution or United States law, was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack. **28 U.S. C. § 2255**. However,

> [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

**Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.** The Court, having reviewed the record of the criminal proceedings, enters summary dismissal for the reasons stated herein.

## II.  PROCEDURAL HISTORY

On October 3, 2006, Petitioner was charged with having been a user and addict of a controlled substance who unlawfully possessed a firearm, in violation of 18 U.S.C. § 922(g)(3) (Count One), and with having unlawfully possessed a pipe bomb and the materials from which a destructive device readily may have been assembled, in violation of 26 U.S.C. §§ 58-61(d) and 5845 (Count Two). **Bill of Indictment, filed October 3, 2006**.

On December 20, 2006, Petitioner entered into a written plea agreement with the Government wherein he agreed to plead guilty to Count Two of the indictment. **Plea Agreement, filed December 21, 2006**.

However, after securing a continuance of his Rule 11 hearing that had been scheduled for January 5, 2007, the Petitioner entered into a second written plea agreement with the Government. **Plea Agreement, filed January 12, 2007**. In this agreement, he agreed to enter a plea of guilty to Count One in exchange for the Government's dismissal of Count Two. *Id*. The agreement advised the Petitioner that his conviction would expose him to a statutory maximum term of 10 years imprisonment *Id*. **at 1**. Furthermore, the plea agreement contained provisions by which Petitioner expressly waived his right to contest his conviction and/or sentence on any grounds except ineffective assistance of counsel, prosecutorial misconduct, or the reasonableness of any upward variances from the applicable sentencing guidelines range. *Id*. **at 4**.

On January 12, 2007, Petitioner and his two retained attorneys appeared before the Magistrate Judge to enter his guilty plea. **Rule 11 Inquiry and Order of Acceptance of Plea, filed January 12, 2007**. At that hearing, the Magistrate Judge placed Petitioner under oath and engaged him in a lengthy colloquy to ensure that his plea was being voluntarily and knowingly tendered. *Id.* **at 2**.

At the outset of that proceeding, the Magistrate Judge asked Petitioner certain background questions in response to which Petitioner advised the Court that he currently was taking on-line college courses; that he had completed a year of studies in atmospheric and environmental science at the University of North Carolina at Asheville; that he was a licensed commercial and sea plane pilot and a flight instructor; and that he was a licensed realtor.  **Transcript of Rule 11 Proceeding, filed October 27, 2008, at 4-7**.  Petitioner further told the Magistrate Judge that he was not under the influence of any alcohol or illegal narcotics.  *Id*. **at 8**. However, Petitioner indicated that he was under a doctor's care, he used Roxicodone to alleviate the pain which he was experiencing from  a motorcycle accident, and he had taken that medication about an hour and a half before his plea hearing.  *Id*. **at 8-14**.

Nevertheless, Petitioner specifically denied that his medication adversely affected his ability to understand the proceeding.  *Id*. **at 10.**  In fact, after the Magistrate Judge gave Petitioner an overview of the Rule 11 proceeding and the Entry and Acceptance of Guilty Plea form, Petitioner advised that his medication would not preclude his ability to provide truthful answers to the Magistrate Judge's questions, and that his mind was clear

and he understood he was in Court to enter his guilty plea. ***Id*. at 9-10, 13**
**(Q: "Are the medicines that you're taking, are they affecting you to the**
**point that you don't believe you can understand those questions and**
**be able to give truthful and accurate answers?"; A: "No, sir"; Q: "Do**
**you want me to go on with this proceeding?"; A: "Yes, sir.").**
Petitioner's attorneys also expressed their opinions that Petitioner was
capable of understanding the questions and going forward with the
proceeding; consequently, the hearing was held as scheduled. ***Id*. at 9-11**.

Next, the Magistrate Judge specifically asked Petitioner if he had
reviewed his indictment and understood the charge and its corresponding
penalties. ***Id*. at 14**. Under oath, Petitioner stated that he had reviewed
the charge with counsel and understood it, its essential elements, and the
maximum penalties as explained by the Court. ***Id*. at 15-17**. The
Magistrate Judge asked Petitioner if he understood his right to plead "not
guilty" and proceed to trial, if he and his attorneys had discussed his right
to appeal, and if he understood that by signing the plea agreement and
entering the guilty plea, he would be greatly limiting his rights to contest his
conviction and sentence. ***Id*. at 21, 24-25**. Again, under oath, Petitioner
stated that he and counsel had discussed those matters, that he

understood them, and accepted the limitations imposed by his guilty plea and his plea agreement. *Id*.

In response to additional questioning by the Magistrate Judge, Petitioner stated, under oath, that he had been afforded ample time to discuss possible defenses with his attorneys and had told counsel everything he wanted them to know about his case; that he understood that if he received a sentence which was more severe than he expected or if the Court did not accept any sentencing recommendations, he still would be bound by his guilty plea; that his guilty plea was voluntarily made and was not the result of coercion, threats or promises other than those contained in his plea agreement; that he was, in fact, guilty of the subject charge; that he was entirely satisfied with the services of his attorneys; and that he understood everything that had taken place during the proceeding. *Id.* **at 21-23, 26-27**.

After hearing Petitioner's answers to each question, the Magistrate Judge found that his guilty plea was knowingly and voluntarily entered and made and that he understood the charges, penalties and consequences of his plea. *Id.* **at 27-28**. Accordingly, the Magistrate Judge accepted Petitioner's guilty plea. *Id*. **at 28**.

On September 25, 2007, Petitioner appeared before the undersigned for a factual basis and sentencing hearing, during which he stipulated that there was a factual basis to support his guilty plea.  **Transcript of Sentencing Hearing, filed October 27, 2008, at 4**.  In addition, Petitioner affirmed that counsel had reviewed his presentence report with him and that he understood its contents.  *Id.*

Thereafter, the Court heard from a polygraph examiner who stated that Petitioner's test results conclusively showed that he was not involved with the pipe bomb materials which were found at his home. Consequently, the Court sustained Petitioner's objection to a proposed enhancement for his possession of such materials, thereby reducing Petitioner's total offense level from 17 to 15.  *Id.* **at 25-26**.  Petitioner's criminal history category was determined to be II, resulting in a recommended guidelines range of 21 to 27 months imprisonment. *Id.* **at 26**.  After defense counsel addressed the Court, Petitioner was afforded an opportunity to do so.  He apologized to the Court for his offense and asked for lenience.  *Id.* **at 28**.  However, the prosecutor asked the Court to sentence Petitioner at the top of the recommended range because his conduct posed a danger to others and he had a history of violent behavior.

*Id.* **at 29**.  Thereafter, the Court sentenced Petitioner to 25 months imprisonment.  **Judgment in a Criminal Case, filed October 3, 2007;** *see also***, Amended Judgment in a Criminal Case, filed January 16, 2008 (amended as to Title and Section of offense); and Second Amended Judgment in a Criminal Case, filed February 6, 2008 (amended as to Nature of Offense only)**.  Petitioner did not file a notice of appeal.

On October 9, 2008, Petitioner timely filed the instant § 2255 motion alleging that: (1) "[t]rial counsel was" ineffective for having failed to file a motion to suppress the evidence which was used to secure his  conviction; (2) his Fifth Amendment right to due process and his Sixth Amendment right to the effective assistance of counsel were violated "by counsel's"[1] failure to file motions to dismiss the indictment and for an evidentiary hearing based upon the totality of the evidence which tended to show that the local officers who investigated Petitioner had engaged in misconduct; (3) his guilty plea was unconstitutional in that it was not intelligently and voluntarily made; and (4) his sentence was improperly imposed because

---

[1]The language which Petitioner uses to articulate his two allegations of ineffective assistance tends to suggest that his claims are aimed at only one of the two privately retained attorneys who represented him during his criminal proceedings.  However, Petitioner has failed to identify which of the two attorneys his claims are aimed.

the Government never proved that he actually possessed the firearm or the methamphetamine which formed the basis of a sentencing enhancement.


## III.  DISCUSSION

**A.**   **Petitioner's claims of an unconstitutional guilty plea and an improper sentence are barred by his procedural default of those matters and/or the waiver provision in his plea agreement.**

Taking them out of order, by his third and fourth claims, Petitioner alleges that his guilty plea was not knowingly and voluntarily made and entered and that his sentence was not properly calculated.  However, it has not escaped the Court's attention that neither of these claims was raised before the trial court or on direct appeal.

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999), *citing United States v. Frady*, 456 U.S. 152 at 167-68 (1982); *see also Bousley v. United States*, 523 U.S. 614, 621 (1998) (*habeas* review is

**an extraordinary remedy and will not be allowed to do service for an**

**appeal; and failure to challenge a matter on direct appeal, absent**

**certain compelling circumstances, bars collateral review of same);**

***Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).**

Petitioner did not file a direct appeal in the underlying criminal case

and he has done little more than make a half-hearted attempt to establish

cause to excuse his procedural default.  Specifically, in response to

questions on Petitioner's motion to vacate form that pertain to the

exhaustion of his claims, he asserts that counsel failed to file a notice of

appeal before the expiration of the appeal deadline.  Notably, however,

Petitioner does not claim that he directed counsel to file any such appeal.

Nor does he include as a claim for relief an allegation that one of his

attorneys denied him his right to an appeal.

Rather, it is only in response to question 18 -- a question which is

designed to elicit information pertaining to the timeliness of the filing of the

motion to vacate -- that Petitioner asserts that he actually asked for an

appeal.  Specifically, when asked why his motion should be deemed timely

filed, Petitioner states that, "his motion is timely filed. . . . Due to trial

counsel's failure to file a timely Notice of Appeal (even though he was

instructed to do so by defendant) within the ten (10) days [sic] time allowance." **Petitioner's Motion, at 12.** However, given Petitioner's educational background, the Court finds that he was more than capable of asserting both that counsel had failed to file an appeal <u>and</u> that he actually had requested an appeal in order to establish cause for his failure to exhaust his claims.

Moreover, even assuming that Petitioner's response to question 18 is sufficient to establish cause for his procedural default of the two claims, he still cannot overcome his default because he has failed to show actual prejudice resulting from the errors about which he complains. ***See Frady*, 456 U.S. at 167-68 (noting requirement for showing of both cause and prejudice to overcome default)**. Indeed, Petitioner has not even attempted to establish that the alleged errors worked to his "actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." ***Id*. at 170**. Nor did Petitioner make any mention of his actual innocence. On the contrary, this record contains Petitioner's apology for the subject offense and his request for lenience, not exoneration. Accordingly, Petitioner's failure to raise these claims at

any point before now has resulted in his procedural default of them, and such failure divests this Court of the authority to adjudicate the allegations.

Furthermore, even if Petitioner had not procedurally defaulted these claims, he still could not raise them because he waived his right to do so under the terms of his plea agreement. Indeed, the Fourth Circuit repeatedly has approved the knowing and voluntarily waiver of a defendant's appellate rights. *See United States v. Cohen,* **459 F.3d 490, 493-95 (4th Cir. 2006),** *cert. denied***, 127 S. Ct. 1169 (2007);** *United States v. Johnson***, 410 F.3d 137, 151-53 (4th Cir. 2005);** *United States v. Blick***, 408 F.3d 162, 172 (4th Cir. 2005)**. Furthermore, the Fourth Circuit recently expanded the general rule concerning appeal waivers to hold that a defendant may waive in a plea agreement his rights under § 2255 to attack his conviction and sentence collaterally. *United States v. Lemaster,* **403 F.3d 216, 221 (4th Cir. 2005).**

In the instant case, Petitioner entered into a written plea agreement with the Government by which he waived his right to present the subject claims in a collateral proceeding such as this one. As was previously noted, during his Rule 11 hearing, Petitioner explained his educational background and swore that he understood that under the terms of his plea

agreement he was limiting his right to raise these types of post-conviction challenges to his conviction and/ or sentence. Petitioner also swore that he agreed to those terms. Although Petitioner now claims that he was not physically and mentally capable of going forward with his guilty plea hearing and that counsel coerced his guilty plea, those assertions are wholly belied by the record.

Contrary to his belated assertions, the transcript of his plea hearing shows that Petitioner twice swore that he fully understood the proceeding, the charges he was facing and the terms of his plea agreement, including its waiver provision. Petitioner also swore that no one had forced or coerced him into pleading guilty and that he was satisfied with his attorneys' services. Such sworn representations cannot lightly be set aside. Rather, this case fits squarely within the principle that sworn statements previously made under oath, particularly those made during a Rule 11 proceeding which affirm an understanding of the proceedings, are deemed binding in the absence of "clear and convincing evidence to the contrary." ***Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4ᵗʰ Cir. 1988) (citing *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977)).** Indeed,

such statements "constitute a formidable barrier" to their subsequent attack. **Blackledge, 431 U.S. at 73-74.**

In short, once a trial court conducts a Rule 11 colloquy and finds that the plea is being knowingly and voluntarily tendered, the validity of the plea and Petitioner's corresponding responses are deemed to be conclusively established, absent compelling reasons to the contrary. **Via v. Superintendent, Powhatan Corr. Cen., 643 F.2d 167 (4th Cir. 1981).** In sum, therefore, Petitioner has procedurally defaulted the foregoing two claims without excuse and, in any event, he has waived his right to raise these claims in this proceeding. Therefore, these matters are not subject to this Court's review.

**B.     Petitioner's claims of ineffective assistance of counsel are waived by his guilty plea**.

By his first and second claims, Petitioner alleges that he was subjected to ineffective assistance of counsel due to the failure of at least one of his attorneys to file pretrial motions to suppress the evidence and dismiss the indictment, and for an evidentiary hearing. However, notwithstanding the absence of such motions, as has been noted, Petitioner still entered into a written plea agreement, stood before the

Court with those attorneys and entered his guilty plea, told the Court that he was guilty of the charge, and affirmed that he had no complaints about the performance of his attorneys.

The law is well settled that "a guilty plea constitutes a waiver of all nonjurisdictional defects[.]" ***United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993)**.  In other words, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  ***Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also*, *Hall v. McKenzie*, 575 F.2d 481, 484 (4th Cir. 1978) (finding that a guilty plea entered in state court foreclosed defendant's right to challenge the constitutionality of hearing held before entering that plea)**.  Ultimately, inasmuch as this Court has determined that Petitioner entered a valid and fully enforceable guilty plea, he has waived his right to challenge his attorneys' alleged failures to file the subject pretrial motions.  Therefore, Petitioner's claims of ineffective assistance of counsel are barred by his waiver of those matters.

## IV.  CONCLUSION

Petitioner's motion to vacate contains claims which he either has procedurally defaulted and/or waived his right to assert in this collateral proceeding.  Accordingly, Petitioner's motion must be summarily dismissed.

## V.  ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is hereby **DENIED,** and the action is dismissed by way of Judgment filed herewith.

Signed: November 20, 2008

Lacy H. Thornburg
United States District Judge